## MORTON SALT CO. *v.* G. S. SUPPIGER CO.

No. 49. Argued December 10, 1941.—Decided January 5, 1942.

---

[8] The texts of the mortgages are not contained in the record: and Dailey did not appear in this Court.

*Mr. Clarence E. Mehlhope,* with whom *Mr. Walter A. Scott* was on the brief, for petitioner.

*Messrs. Estill E. Ezell* and *Lawrence C. Kingsland,* with whom *Messrs. Edmund C. Rogers* and *Robert H. Wendt* were on the brief, for respondent.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

Respondent brought this suit in the district court for an injunction and an accounting for infringement of its Patent No. 2,060,645, of November 10, 1936, on a machine for depositing salt tablets, a device said to be useful in the canning industry for adding predetermined amounts of salt in tablet form to the contents of the cans.

Upon petitioner's motion, pursuant to Rule 56 of the Rules of Civil Procedure, the trial court, without passing

on the issues of validity and infringement, granted summary judgment dismissing the complaint. It took the ground that respondent was making use of the patent to restrain the sale of salt tablets in competition with its own sale of unpatented tablets, by requiring licensees to use with the patented machines only tablets sold by respondent. The Court of Appeals for the Seventh Circuit reversed, 117 F. 2d 968, because it thought that respondent's use of the patent was not shown to violate § 3 of the Clayton Act, 15 U. S. C. § 14, as it did not appear that the use of its patent substantially lessened competition or tended to create a monopoly in salt tablets. We granted certiorari, 313 U. S. 555, because of the public importance of the question presented and of an alleged conflict of the decision below with *B. B. Chemical Co.* v. *Ellis,* 117 F. 2d 829, and with the principles underlying the decisions in *Carbice Corp.* v. *American Patents Corp.,* 283 U. S. 27, and *Leitch Mfg. Co.* v. *Barber Co.,* 302 U. S. 458.

The Clayton Act authorizes those injured by violations tending to monopoly to maintain suit for treble damages and for an injunction in appropriate cases. 15 U. S. C. §§ 1, 2, 14, 15, 26. But the present suit is for infringement of a patent. The question we must decide is not necessarily whether respondent has violated the Clayton Act, but whether a court of equity will lend its aid to protect the patent monopoly when respondent is using it as the effective means of restraining competition with its sale of an unpatented article.

Both respondent's wholly owned subsidiary and the petitioner manufacture and sell salt tablets used and useful in the canning trade. The tablets have a particular configuration rendering them capable of convenient use in respondent's patented machines. Petitioner makes and leases to canners unpatented salt depositing machines,

charged to infringe respondent's patent. For reasons we indicate later, nothing turns on the fact that petitioner also competes with respondent in the sale of the tablets, and we may assume for purposes of this case that petitioner is doing no more than making and leasing the alleged infringing machines. The principal business of respondent's subsidiary, from which its profits are derived, is the sale of salt tablets. In connection with this business, and as an adjunct to it, respondent leases its patented machines to commercial canners, some two hundred in all, under licenses to use the machines upon condition and with the agreement of the licensees that only the subsidiary's salt tablets be used with the leased machines.

It thus appears that respondent is making use of its patent monopoly to restrain competition in the marketing of unpatented articles, salt tablets, for use with the patented machines, and is aiding in the creation of a limited monopoly in the tablets not within that granted by the patent. A patent operates to create and grant to the patentee an exclusive right to make, use and vend the particular device described and claimed in the patent. But a patent affords no immunity for a monopoly not within the grant, *Interstate Circuit* v. *United States*, 306 U. S. 208, 228, 230; *Ethyl Gasoline Corp.* v. *United States*, 309 U. S. 436, 456, and the use of it to suppress competition in the sale of an unpatented article may deprive the patentee of the aid of a court of equity to restrain an alleged infringement by one who is a competitor. It is the established rule that a patentee who has granted a license on condition that the patented invention be used by the licensee only with unpatented materials furnished by the licensor, may not restrain as a contributory infringer one who sells to the licensee like materials for like use. *Motion Picture Patents Co.* v. *Universal Film Mfg. Co.*, 243 U. S. 502, 510; *Carbice Corp.* v. *American Patents*

*Corp., supra; Leitch Mfg. Co.* v. *Barber Co., supra;* cf. *United Shoe Machinery Co.* v. *United States,* 258 U. S. 451, 462; *International Business Machines Corp.* v. *United States,* 298 U. S. 131, 140.

The grant to the inventor of the special privilege of a patent monopoly carries out a public policy adopted by the Constitution and laws of the United States, "to promote the Progress of Science and useful Arts, by securing for limited Times to . . . Inventors the exclusive Right . . ." to their "new and useful" inventions. United States Constitution, Art. I, § 8, cl. 8; 35 U. S. C. § 31. But the public policy which includes inventions within the granted monopoly excludes from it all that is not embraced in the invention. It equally forbids the use of the patent to secure an exclusive right or limited monopoly not granted by the Patent Office and which it is contrary to public policy to grant.

It is a principle of general application that courts, and especially courts of equity, may appropriately withhold their aid where the plaintiff is using the right asserted contrary to the public interest. *Virginian Ry. Co.* v. *Federation,* 300 U. S. 515, 552; *Central Kentucky Co.* v. *Railroad Commission,* 290 U. S. 264, 270–73; *Harrisonville* v. *Dickey Clay Co.,* 289 U. S. 334, 337–38; *Beasley* v. *Texas & Pacific Ry. Co.,* 191 U. S. 492, 497; *Securities & Exchange Comm'n* v. *U. S. Realty Co.,* 310 U. S. 434, 455; *United States* v. *Morgan,* 307 U. S. 183, 194. Respondent argues that this doctrine is limited in its application to those cases where the patentee seeks to restrain contributory infringement by the sale to licensees of a competing unpatented article, while here respondent seeks to restrain petitioner from a direct infringement, the manufacture and sale of the salt tablet depositor. It is said that the equitable maxim that a party seeking the aid of a court of equity must come into court with clean hands applies only to the plaintiff's wrongful conduct in the particular act or transaction which raises the

equity, enforcement of which is sought; that where, as here, the patentee seeks to restrain the manufacture or use of the patented device, his conduct in using the patent to restrict competition in the sale of salt tablets does not foreclose him from seeking relief limited to an injunction against the manufacture and sale of the infringing machine alone.

Undoubtedly "equity does not demand that its suitors shall have led blameless lives," *Loughran* v. *Loughran*, 292 U. S. 216, 229; cf. *Keystone Driller Co.* v. *Excavator Co.*, 290 U. S. 240, 241–45, but additional considerations must be taken into account where maintenance of the suit concerns the public interest as well as the private interests of suitors. Where the patent is used as a means of restraining competition with the patentee's sale of an unpatented product, the successful prosecution of an infringement suit even against one who is not a competitor in such sale is a powerful aid to the maintenance of the attempted monopoly of the unpatented article, and is thus a contributing factor in thwarting the public policy underlying the grant of the patent. Maintenance and enlargement of the attempted monopoly of the unpatented article are dependent to some extent upon persuading the public of the validity of the patent, which the infringement suit is intended to establish. Equity may rightly withhold its assistance from such a use of the patent by declining to entertain a suit for infringement, and should do so at least until it is made to appear that the improper practice has been abandoned and that the consequences of the misuse of the patent have been dissipated. Cf. *B. B. Chemical Co.* v. *Ellis, post,* p. 495.

The reasons for barring the prosecution of such a suit against one who is not a competitor with the patentee in the sale of the unpatented product are fundamentally the same as those which preclude an infringement suit against a licensee who has violated a condition of the license by using with the licensed machine a competing

unpatented article, *Motion Picture Patents Co.* v. *Universal Film Mfg. Co., supra,* or against a vendee of a patented or copyrighted article for violation of a condition for the maintenance of resale prices, *Adams* v. *Burke,* 17 Wall. 453; *Bobbs-Merrill Co.* v. *Straus,* 210 U. S. 339; *Bauer & Cie* v. *O'Donnell,* 229 U. S. 1; *Straus* v. *Victor Talking Machine Co.,* 243 U. S. 490; *Boston Store* v. *American Graphophone Co.,* 246 U. S. 8; cf. *United States* v. *General Electric Co.,* 272 U. S. 476, 485. It is the adverse effect upon the public interest of a successful infringement suit, in conjunction with the patentee's course of conduct, which disqualifies him to maintain the suit, regardless of whether the particular defendant has suffered from the misuse of the patent. Similarly equity will deny relief for infringement of a trademark where the plaintiff is misrepresenting to the public the nature of his product either by the trademark itself or by his label. *Manhattan Medicine Co.* v. *Wood,* 108 U. S. 218; *Worden* v. *California Fig Syrup Co.,* 187 U. S. 516; *Leather Cloth Co.* v. *American Leather Cloth Co.,* 11 H. L. 522, 541–45; see also, for application of the like doctrine in the case of copyright, *Edward Thompson Co.* v. *American Law Book Co.,* 122 F. 922, 926; *Stone & M'Carrick* v. *Dugan Piano Co.,* 220 F. 837, 841–43. The patentee, like these other holders of an exclusive privilege granted in the furtherance of a public policy, may not claim protection of his grant by the courts where it is being used to subvert that policy.

It is unnecessary to decide whether respondent has violated the Clayton Act, for we conclude that in any event the maintenance of the present suit to restrain petitioner's manufacture or sale of the alleged infringing machines is contrary to public policy and that the district court rightly dismissed the complaint for want of equity.

*Reversed.*

MR. JUSTICE ROBERTS took no part in the decision of this case.