349 F.2d 971
 121 U.S.App.D.C. 293, 61 P.U.R.3d 217
 SOUTH FLORIDA TELEVISION CORPORATION, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, L. B. Wilson,
Inc., Intervenor.
MIAMI TELEVISION CORPORATION, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, L. B. Wilson,
Inc., Intervenor.
 Nos. 18873, 18880.
 United States Court of Appeals District of Columbia Circuit.
 Argued March 8, 1965.
Decided July 8, 1965.
 
 Mr. Harold David Cohen, Washington, D.C., with whom Messrs. W. Theodore Pierson, Vernon C. Kohlhaas, Peter D. O'Connell, Scott W. Lucas and Joseph B. Friedman, Washington, D.C., were on the brief, for appellant in No. 18873.
 Mr. John B. Kenkel, Washington, D.C., with whom Messrs. Arthur H. Schroeder and John P. Bankson, Jr., Washington, D.C., were on the brief, for appellant in No. 18880.
 Mr. Joel H. Levy, Counsel, F.C.C., with whom Messrs. Henry Geller, Gen. Counsel, and John H. Conlin, Associate Gen. Counsel, F.C.C., were on the brief, for appellee. Mr. Daniel R. Ohlbaum, Deputy Gen. Counsel, also entered an appearance for appellee. Mr. Howard Jay Braun, Counsel, F.C.C., also entered an appearance for appellee in No. 18873.
 Mr. Paul A. Porter, Washington, D.C., with whom Messrs. Reed Miller, Robert A. Marmet and Edwin R. Schneider, Jr., Washington, D.C., were on the brief, for intervenor.
 Before EDGERTON, Senior Circuit Judge, and FAHY and WRIGHT, Circuit judges.
 PER CURIAM:
 
 
 1
 These appeals challenge the validity of a final decision and order of the Federal Communications Commission, adopted July 29, 1964, denying the applications of appellants South Florida Television Corporation, Civic Television, Inc.,[1] and Miami Television Corporation for permits to construct a new television station to be operated on Channel 10 in Miami, Florida, and granting the competing application of intervenor L. B. Wilson, Inc. For prior judicial history of the controversy over Channel 10 at Miami, begun before the Commission in 1953, see our decisions in WKAT, Inc. v. Federal Communications Comm'n, 103 U.S.App.D.C. 324, 258 F.2d 418, and in WKAT, Inc. v. Federal Communications Comm'n, 111 U.S.App.D.C. 253, 296 F.2d 375, cert. denied sub nom., Public Service Television, Inc. v. Federal Communications Comm'n, 368 U.S. 841, 82 S.Ct. 63, 7 L.Ed.2d 40.
 
 
 2
 In the proceedings now before us, after these decisions of our court, only Wilson survived as a qualified applicant. On October 19, 1961, the Commission authorized Wilson to begin operations on November 20, 1961, thereafter directing it, however, to file application for renewal of its license within four months from November 20, 1961. Other applications for Channel 10 were required to be filed by May 21, 1962. Appellants filed their applications within that time.
 
 
 3
 As a result of a comparative hearing on the four applications the hearing examiner on December 23, 1963, decided in favor of South Florida. The Commission in due course reversed, and granted the application of Wilson. This decision, rendered July 29, 1964, is now before us. We affirm.
 
 
 4
 A principal contention of appellants is that the Commission, unlike the hearing examiner, erred in considering Wilson as having the status of a licensee seeking renewal, though its license, as indicated above, was for only four months. It is said Wilson should have been considered only as a temporary operator and treated on a basis of equality with appellants, no favorable consideration being given to it by reason of its previous operation of the channel. Though Wilson was accorded the status of a licensee[2] it was held to occupy a less favorable position than a normal licensee because, as stated by the Commission, of '(a) the limited period afforded under and the nature of the authorization granted, and (b) the aforeknowledge of L. B. Wilson, Inc., of the probability it would be faced with a comparative hearing at the end of its 4-month term.'
 
 
 5
 Other principal contentions of appellants are that, due in part to an unfair advantage allegedly given to Wilson as a licensee, the Commission erred in finding Wilson (1) superior in respect of broadcast experience, (2) superior in integration of ownership with management, and in finding (3) practical equality among the applicants in respect of area familiarity. Due to these asserted errors, and the superiority of appellants in other relevant respects, it is urged the decision in favor of Wilson cannot stand.
 
 
 6
 The credit given to Wilson in the comparative category of past broadcasting performance due to its record of performance, the Commission stated, was 'minor in nature,' and such record was not directly considered in any of the three comparative categories above enumerated and characterized as erroneous by appellants. In none of these categories was Wilson given an unfair advantage by virtue of being a license renewal applicant.
 
 
 7
 Though we might have reached a different result-- this we need not decide-- we conclude that the findings of the Commission, and its decision resting thereon, were reached validly. All factors essential to decision were considered and compared.[3] With sufficient factual support all issues were resolved in a manner which disables the court from putting aside the award to Wilson. It was the result of a reasoned and reasonable judgment of the agency charged with primary responsibility in the matter.
 
 
 8
 Affirmed.
 
 
 9
 J. SKELLY WRIGHT, Circuit Judge (dissenting):
 
 
 10
 In granting intervenor's application after the comparative hearing, the Commission held that intervenor had the status 'of a licensee seeking renewal of its license * * * albeit occupying a less favorable position than that which one seeking renewal normally holds.' L. B. Wilson, Inc., 37 F.C.C. 511, 515, 3 Pike & Fischer R.R. 2d 61, 62 (1964). In so holding, the Commission, in my judgment, violated Section 301 of the Communications Act of 1934, 48 STAT. 1081, 47 U.S.C. 301, which provides that no license granted by the Commission 'shall be construed to create any right, beyond the terms, conditions, and periods of the license.'
 
 
 11
 The right to operate a television station is a public right granted by the Commission, as a representative of the public, to a private applicant, free of charge. To make certain that the licenses granted by the Commission would become equally available to other applicants every three years, Congress made clear that the grant of a license would not prejudice new applicants in their effort to participate in the public largesse. The effect of the Commission's ruling here, and its prior rulings[1] giving a preferential position to license holders, is in derogation of the congressional command and apparently is responsible for the private sales of television stations in urban areas running into millions of dollars. Servicing this kind of investment requires substantial advertising revenues. If the Commission would make clear, as the Congress has, that a licensee has no further rights beyond the term of its license, there would be no certainty that these public grants would continue to go to the prior license holder. The result of the Commission's practice giving the license holder a preference has been to make renewal of licenses almost automatic, in spite of the fact that a form of comparative hearing as required by Ashbacker[2] is indulged.
 
 
 12
 I would remand this case for reconsideration, without any preference whatever to intervenor.
 
 
 13
 One further matter perhaps is worth noting. After argument, the court requested briefs from all parties, including the Commission, directed toward answering the following questions:
 
 
 14
 1. Is the amount of TV time actually used in stating, singing, or otherwise showing commercials a public interest consideration?
 
 
 15
 2. If so, should the Commission be required to consider the length and number of commercials proposed by the competing applicants in this case?
 
 
 16
 3. Is the audio volume of the commercials vis-a-vis the other part of the program a public interest consideration?
 
 
 17
 4. If so, should the Commission be required to consider proposals made by the competing applicants in this case with respect to audio volume?
 
 
 18
 The briefs filed pursuant to the court's order are indeed interesting. The competing parties stopped their internecine warfare and joined hands with the Commission in opposing the court's authority to raise the issue of advertising, loud or otherwise. The reason for the solidarity on this issue is, of course, obvious. But perhaps it is not too much to hope that in some future proceeding one of the parties, or even the Commission itself, will perceive the possibility that the public may have some interest, adverse though it may be, in the length and loudness of commercials.
 
 
 
 [1]
 Civic's appeal was dismissed on its own motion
 
 
 [2]
 We do not read our decision in the second WKAT case as holding this to have been improper
 
 
 [3]
 In its Supplemental Brief filed with us the Commission states that it 'has consistently taken the position that 'over-commercialization' is inconsistent with the public interest.'
 
 
 [1]
 See, e.g., Wabash Valley Broadcasting Corporation, 1 Pike & Fischer R.R.2d 573 (1963); Hearst Radio, Inc., 6 Pike & Fischer R.R. 994 (1951)
 
 
 [2]
 Ashbacker Radio Corp. v. F.C.C., 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945)